NIMMONS, Judge.
This is an interlocutory appeal from an order granting plaintiff/appellee’s motion for partial summary judgment on the issue of liability. Appellee cross-appeals. John Harris, individually and for the use and benefit of City National Bank (the owner of a security interest in the subject aircraft) brought this action to recover on an insurance policy issued by defendants/appellants (hereafter Underwriters) insuring a 1967 Cessna aircraft for, among other coverages, loss due to theft.
The trial court’s order determined that the plaintiff was entitled to recover from Underwriters and that the measure of damages would be the full value of the aircraft at the time of its loss, less deductible and salvage which was received by City National Bank (hereafter Bank). We affirm in part and reverse in part.
At the time of the airplane’s theft, the subject insurance policy was in effect and provided that an insured loss would be payable as interest may appear to owner Harris and the Bank. In October, 1979, the airplane was reported to be missing. Harris did not thereafter make any further monthly payments to the Bank as required by the security agreement. On March 7, 1980, Harris executed a proof of loss for the insured value of the airplane ($36,000) less the deductible ($250). Two weeks later, Harris was informed by the Federal Bureau of Investigation that the airplane had been seized in Georgia as a result of its alleged involvement in drug trafficking in South America. Meanwhile, a representative of Underwriters called the Bank and advised that the Drug Enforcement Agency was releasing the airplane to Underwriters. According to the Bank’s representative, Underwriters made it clear to him that Underwriters were going to return the plane to Destín, Florida (the place from which it was stolen), cancel the policy and “walk away from it.” Instead, the Bank arranged with Underwriters for the Bank to repossess the airplane in Georgia under the terms of the security agreement and the repossession was accomplished on April 2, 1980. The Bank had been unable to reach Harris to inform him of its plans for repossession which had been worked out with Underwriters.
Underwriters assert that the measure of damages provided for in the appealed order is contrary to the following terms of the insurance policy:
The liability of the Insurer for direct physical loss of or damage to the aircraft shall not exceed the amount of insurance set out in the Declarations, less the applicable deductible, nor what it would cost to repair or replace the aircraft or parts thereof with other of like kind and quality, and without compensation for loss of use. The Insurer may pay for the loss in money or may repair or replace the aircraft or parts thereof, as aforesaid, or may return any stolen property with payment for any resultant damage thereto at any time before the loss is paid or the property is so replaced, or may take all or such part of the aircraft at the agreed or appraised value, but there shall be no abandonment to the Insurer, (emphasis supplied)
Underwriters claim that their liability for loss or damage to the insured property is strictly limited by the above settlement options provided for in the insuring agreement. In effect, they say that they returned the stolen airplane to the insured when it was lawfully repossessed with their *64 consent by the Bank, the loss payee under the policy. However, this argument ignores the fact that the Underwriters made no offer or tender of payment for “resultant damages” and thus cannot be said to have elected that settlement option, that is, “return [of the] stolen property with payment for any resultant damage.” Of course, the Underwriters cannot escape liability simply because they fail to exercise any of the settlement options provided for in their insurance contract.
Underwriters concede there was a theft and, although the airplane was recovered, they also concede that damage as a result of the theft was covered by the policy. As stated in Sunny South Aircraft Service, Inc. v. American Fire and Casualty Company, 140 So.2d 78 (Fla. 3rd DCA 1962):
[W]e hold the loss occurred when the theft took place. Total loss from the theft was avoided by the return of the aircraft. Its condition, when returned, measured the amount of the loss, (emphasis supplied)
140 So.2d at 81. No settlement option under the policy having been exercised by the Underwriters, we hold that the proper measure of recovery under the policy is the difference in the market value at the time of the theft and at the time of its recovery less the deductible provided for in the policy. The general rule has been stated thusly:
Where an airplane has been damaged but not totally destroyed, the measure of damages applied by the courts has generally been the difference in the market value of the plane immediately before and immediately after the injury.
8 Am.Jur.2d Aviation § 33; Compare McMinis v. Phillips, 351 So.2d 1141 (Fla. 1st DCA 1977); and Airtech Service, Inc. v. MacDonald Construction Company, 150 So.2d 465 (Fla. 3rd DCA 1963).
The error in the trial court’s order is its damages formula which provides for market value at the time of the theft less salvage received by the Bank. Of course, if at trial on the damages issues the evidence shows a total loss of the airplane as a result of the theft, the market value of the airplane at the time of the theft less its salvage value would be the correct measure of recovery under the policy.
On cross-appeal, Harris, who conceded in the lower court that he was in default under the security agreement and that the Bank repossessed the security and had the right to do so, contends that he is entitled to recover the full value of the airplane at the time of the theft without reduction except for the $250 deductible amount. Harris reasons that the Underwriters, in effect, “took” the aircraft and that they, therefore, exercised one of the insuring agreement’s settlement options which allowed Underwriters to “take all or such part of the aircraft at the agreed or appraised value.” Harris, therefore, concludes that the trial court erroneously provided for the aircraft’s value at the time of theft to be reduced by any amount except the deductible. We disagree that the facts of this case and the insuring agreement lend themselves to such a strained interpretation which would result in a substantial windfall to Harris.
Lastly, we point out that, although appel-lee/eross-appellant Harris has appeared in this interlocutory appeal only in his individual capacity, the plaintiff in the case below is Harris, individually and for the use and benefit of the Bank. No determination has been made by the trial court as to the amount of the insurance proceeds, if any, which Harris will be entitled to in his individual capacity and we, therefore, have no occasion to consider that question.
We affirm in part and reverse in part and remand for further proceedings consistent with this opinion.
ERVIN, C.J., and THOMPSON, J., concur.